

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NMA:EAG/AL
F.#2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 28, 2014

By Hand and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Reynold Maragni
              Criminal Docket Nos. 11-0030 and 12-0114 (KAM)

Dear Judge Matsumoto:

          The government respectfully submits this letter in connection with sentencing in the above-captioned case.  Pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the government moves the Court, in its discretion, to impose a sentence below the applicable United States Sentencing Guidelines (the "Guidelines") range and mandatory minimum sentence because of Reynold Maragni's substantial assistance to the government.

          As further discussed below, among other assistance, Maragni has provided information crucial to the prosecution of several members and associates of the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively).

- Maragni's cooperation assisted in the government's prosecution of Thomas Gioeli and Dino Saracino in United States v. Gioeli, et al., Criminal Docket No. 08-240 (BMC) ("Gioeli").
- Maragni's cooperation formed the basis for the government's prosecution of Thomas Farese and Pat Truglia in United States v. Farese, et al., Criminal Docket No. 12-14 (FB) ("Farese").
- Maragni's anticipated trial testimony in United States v. Andrew Russo, et al., Criminal Docket No. 11-0030 (KAM), contributed to the entry of guilty pleas by

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 2

certain defendants, some of whom were high-ranking members of the Colombo
family.

- Maragni's cooperation assisted in the government's prosecution in United States v.
Guerra, et al., Criminal Docket No. 11-0147 (SLT) ("Guerra"), in which Francis "BF"
Guerra, a powerful Colombo crime family associate, was charged with racketeering
conspiracy, including, among other crimes, two murders as predicate racketeering
acts, and related crimes, and in which Colombo crime family captain Theodore
"Teddy Boy" Persico, Jr., and powerful Colombo crime family associate Michael
Persico were charged with racketeering conspiracy, including, among other crimes,
murder as a predicate racketeering act.  Maragni's anticipated testimony contributed
to the entry of guilty pleas by Persico, Jr., and Persico before trial was scheduled to
commence, and his testimony contributed to the conviction of Guerra at trial.

- Maragni's anticipated trial testimony in United States v. Joseph Petillo, Criminal
Docket No. 11-0791 (FB), and United States v. Ralph DeLeo, et al., Criminal Docket
No. 09-10391 (DPW) (D. Mass.), contributed to the entry of guilty pleas by three
defendants, one of whom was a high-ranking member of the Colombo family.

I.    Offense Conduct

Maragni was arrested by special agents of the Federal Bureau of Investigation
("FBI") on January 20, 2011, for racketeering conspiracy, including, among other offenses,
narcotics trafficking, extortion, money laundering and possession of contraband cigarettes
as predicate racketeering acts, and related racketeering offenses.  (See Docket Entry Nos. 1
(Indictment) and 150 (arraignment)).

As of the time of his arrest on January 20, 2011, Maragni held a senior
leadership position as a captain of the Colombo family.  (Presentence Investigation Report
("PSR") ¶¶ 28-29).  Maragni attended meetings with members of the administration of the
Colombo family and frequently interacted with other high-ranking members of the Colombo
family.  Maragni also administered a crew of Colombo family soldiers and associates, the
majority of whom resided in Florida.  In his position as a Colombo family captain, Maragni
also weighed in on whether proposed Colombo family associates should be inducted into the
Colombo family and attended secret ceremonies at which these associates were inducted.  In

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 3

connection with his membership in the Colombo family, Maragni engaged in a variety of racketeering acts, the most serious of which are described below.

A.    Extortionate Collection - John Doe #11

Maragni, together with codefendant Scott Fappiano, conspired to use extortionate means to collect a debt owed by John Doe #11.  On a consensual recording made by a cooperating witness ("CW-1") in March 2010, Fappiano explained:

> I might need you . . . if I do it I'll go to jail . . . spoke to Reynold
> [Maragni] . . . I want to be diplomatic . . . it gets to the point
> where he may have to get his fucking leg broken . . . I'll make
> sure I'm in court somewhere or doing a deposition . . . the last
> time I was in Punta Cana when they went to get him, he called
> the cops . . . he seen him coming.

Fappiano later provided CW-1 with a slip of paper that listed the debtor's name, business address, mother's address and other identifying information so that CW-1 could locate, assault and collect gambling losses owed by John Doe #11.

B.    Loansharking Conspiracy - John Doe #19

Maragni, together with codefendant Anthony Russo, conspired to use extortionate means to collect a debt owed by John Doe #19, an individual Maragni described as owning a surveying company and residing in New York.  On a consensual recording, in November 2010, Maragni, who at the time was in Florida, explained to CW-1:

MARAGNI:    We're gonna grab someone when I come up [to New York].
            This kid Vincent.  He's got a surveying company.  When we
            had the conversation, everything this kid.  We're gonna kick
            the shit out of him.

MARAGNI:    I'll talk to Anthony [Russo] when I come up.

CW-1:       You mean about your situation.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 4

MARAGNI:        There was a settlement.  I settled for 20.  They were supposed
                to live up to his end of the bargain.  13.  Supposed to give me
                the other seven.  Time share thing.  400 per month.  I told him
                two days, I spoke to you, he gave you me word.  Now I don't
                want to talk to you anymore.  Now I want the whole 40.  The
                time share, I want the whole fuckin' thing.  That's another
                $25,000.  Either you give me the money.  I'm gonna abuse
                Stevie Mad Dog.  I want to be introduced to him.

       In a subsequent consensual recording on December 1, 2010, Maragni provided
CW-1 with additional identifying information for John Doe #19 and asked CW-1 to threaten
this individual and tell him he better start paying his debt:

MARAGNI:        Another thing, this surveyor, this landscaper. . . .

                                    * * *

MARAGNI:        First of all, the deal was made.  That this kid was gonna start
                coming on the payments. [U/I]

CW-1:           I don't know where to find him or.

MARAGNI:        That place, Esca's

CW-1:           [U/I]

MARAGNI:        Esca's on Richmond Road.

CW-1:           Oh that place?

MARAGNI:        Stevie Mad Dog.  I told, you gave me my word [U/I].  There's
                nothing for me to talk to you [Vincent, the "surveyor"] about
                because you didn't do what you said you were gonna do.

CW-1:           [U/I] You don't want us to nothing.

MARAGNI:        I would like to see him.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 5

| | | |
|---|---|---|
| CW-1: | What would you like to tell him? |
| MARAGNI: | Now I want all the money. |
| CW-1: | [U/I] give him one more shot. |
| MARAGNI: | I wanna give him nothing.  When you see this kid, I want you to take him off his feet.  Take him off his fuckin' feet.  Tell him if you're ever fuckin' late for one of his payments again, you can |

* * *

| | |
|---|---|
| MARAGNI: | You're late one more time, take him right off his fuckin' feet.  I want him stabbed. |
| CW-1: | Alright [laughing] |
| MARAGNI: | Take him off with a couple of kicks to the belly. |
| CW-1: | Um hum.  Yeah.  A little wake-up call. |
| MARAGNI: | I want you to fuckin' horrify him.  Horrify him. |
| CW-1: | [U/I] |
| MARAGNI: | Next time you're going in the trunk.  Don't ever be late with these payments again.  [U/I] can't stop us from getting to you. |

Thereafter, CW-1 told Colombo family acting captain Anthony Russo about Maragni's request, and Anthony Russo agreed to pursue the matter.

C.    Fraud Scheme

Maragni engaged in a scheme to attempt to defraud CW-1 and another cooperating witness ("CW-2") by pretending that he would bribe a public servant in the State of Florida to cause the commutation of the sentence of a relative of CW-1 who had been sentenced to a lengthy term of imprisonment.  On a consensual recording, Maragni

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 6

explained that the amount of the bribe "could be anywhere from 25 to 50," i.e., $25,000 to
$50,000, and later added that his contact "m[ight] turn around and tell me 100."  Maragni
vowed, "I'm gonna do everything I can, to let him agree to take as least amount as I can."
In September 2010, CW-1 traveled to Florida to meet with Maragni, who told CW-1 that
during the previous day, Maragni had met his contact, whom he described as a lawyer, for
three hours.  Maragni said that his contact asked for $80,000 to $85,000 to help CW-1's
relative.  Maragni later told CW-2 that the agreed-upon bribe was $80,000, to be paid in
three installments.

        In November 2010, on behalf of CW-1, CW-2 provided $25,000 to Maragni,
representing the first of three planned payments.  However, when Maragni subsequently
advised CW-1 that he would not deliver the bribe money to his contact for several weeks,
CW-1 requested that Maragni return the money, and Maragni agreed.  As part of his
cooperation, Maragni advised that he did not have any such contacts and that his actions
were part of a scheme to defraud CW-1 and CW-2.

        D.      Marijuana Distribution Conspiracy

        In 2009, Maragni, together with members and associates of the Colombo
family, including Ralph DeLeo, who was then the acting boss of the crime family,
participated in a conspiracy to distribute 250 pounds (113 kilograms) of marijuana.  In July
2009, DeLeo met with Colombo family member (and codefendant) John Maggio and
Colombo family associate Philip Sciarratta and others at the Charles Hotel in Cambridge,
Massachusetts.  Following that meeting, Sciarratta traveled to Canada in furtherance of the
marijuana conspiracy and brought information back for DeLeo, which information was
memorialized in a note that one of the coconspirators accidentally threw away.  Wiretap
intercepts revealed that Maragni helped to facilitate a subsequent trip by DeLeo to Montreal
in furtherance of the marijuana conspiracy and arranged for DeLeo to meet with a Montreal
resident with ties to La Cosa Nostra.  DeLeo then ordered a 250 pound shipment of
marijuana, which he discussed at a meeting with Maragni and Colombo family member
Michael Ferrara.  The FBI surveilled the meeting and overheard the discussion by DeLeo,
Maragni and Ferrara.  The FBI arrested DeLeo and others before the marijuana shipment was
delivered.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 7

As part of his cooperation, Maragni admitted that he introduced DeLeo to codefendant Vito Vizzi and that Vizzi picked up Deleo at the airport when DeLeo traveled to Canada in furtherance of the conspiracy.  Vizzi then took DeLeo to meet with Vizzi's father, who could supply the marijuana to DeLeo.  Maragni further admitted that he expected a cut of the profits from the scheme.

II.     Prosecution of Maragni

Upon his arrest, Maragni was ordered detained, but on February 4, 2011, the Honorable Lois Bloom ordered Maragni's release; prior to his release, however, the government appealed and the Court subsequently reversed Judge Bloom's order and entered a permanent order of detention as to Maragni.  Subsequently, Maragni started to cooperate with the government, and on March 29, 2011, he participated in the first of numerous meetings with the government, at which he detailed his and others' participation in crimes in connection with the Colombo family over more than two decades.  In April 2011, the government sought Maragni's release to allow him to proactively cooperate by making recordings of his meetings and conversations with members and associates of La Cosa Nostra.  The Court subsequently released Maragni on stringent bail conditions.

On August 1, 2011, Maragni pleaded guilty, pursuant to a plea agreement, to Count Two of the above-captioned indictment, charging a violation of 18 U.S.C. § 1962(d) (including admissions to Racketeering Acts Three, Thirteen, Twenty, Twenty-one, Twenty-six, Twenty-seven and wire fraud (not alleged as a racketeering act)).  (PSR ¶¶ 1-8).  This guilty plea was not entered pursuant to a cooperation agreement.  On February 9, 2002, Maragni subsequently pled guilty, pursuant to a cooperation agreement, to one count of conspiring to distribute over 100 kilograms of marijuana, four counts of illegal loansharking and two counts of money laundering.[1]  (Id. ¶¶ 12-19).

---

[1]     The PSR incorrectly reports that Maragni pled guilty to four counts of 18 U.S.C. § 892(a).  (PSR at 2 and ¶¶ 13-17).  In fact, Maragni pled guilty to two counts 18 U.S.C. § 892(a) and two counts of 18 U.S.C. § 894(a)(1).

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 8

III.    Criminal History

During his cooperation, through debriefing sessions, Maragni has detailed his criminal history for the government.  Maragni also detailed this criminal history during his direct testimony at trial in Gioeli and in Guerra, and his criminal past was also the subject of cross-examination during those trials.  Copies of the portions of the trial transcripts in Gioeli and Guerra that include the defendant's testimony are enclosed as Exhibits A and B, respectively.

A.    Prior Arrests and Convictions

Maragni has two prior federal convictions.  In 1986, Maragni was arrested for using unauthorized access cards with intent to defraud.  Specifically, Maragni, together with others, engaged in a scheme in which they used fraudulent credit cards to purchase tickets to a Disney World theme park, which the coconspirators then resold.  Maragni has advised that he received the cards from a soldier in the Gambino crime family.  Following his guilty plea, Maragni was sentenced to five years' imprisonment but was paroled in 1987 (after serving less than two years' imprisonment).  In 2000, Maragni was arrested for racketeering conspiracy, the same charge to which he pled guilty in this case.  Maragni has advised that he, as an associate of the Colombo crime family, supervised a crew of other Colombo crime family associates who resided in South Florida, and that he shared the profits of the crew's earnings with Alphonse "Allie Boy" Persico, who was then the acting boss of the Colombo crime family and resided in New York.  Maragni later pled guilty and was sentenced to 24 months' imprisonment.

In addition, as set forth in the PSR, Maragni was arrested and convicted on separate occasions in the 1970s for assault, theft and possession of a weapon.

B.    Crimes Disclosed by Maragni

In addition to the crimes with which Maragni was previously charged and those with which he was charged in this case, Maragni has disclosed that he engaged in other crimes.  For example, Maragni admitted that he engaged in a money laundering scheme in the early 1990s, for which he was never arrested.  In that scheme, an individual gave Maragni fraudulent checks that Maragni cashed; he was permitted to retain 10% of the

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 9

proceeds.  Maragni also admitted that he has long operated a lucrative loansharking business
in South Florida.  Maragni advised that upon his arrest in 2000, he had extended between
$40,000 and $80,000 at three points interest (or three percent interest per week) in loanshark
loans, and that during his incarceration between 2000 and 2002, he directed an associate to
take control of his loansharking business while Maragni was incarcerated.  Maragni further
advised that as of his arrest in this case in January 2011, he believed that he was owed almost
$500,000 in outstanding loanshark loans, including unpaid interest that had accrued.  His
customers included, among others, Dennis Cinnante, an individual Maragni knew as
"Jimmy," an individual Maragni knew as "Ash," an  individual Maragni knew as
"Hollywood" and an individual Maragni knew as "Richard Miccelli."

IV.   Guidelines Calculation

        The government submits that the following is the appropriate Guidelines
calculation applicable to Maragni.[2]

Racketeering Act Three and Counts Five and Six (CR 11-0030 (S-3))
(Money Laundering Conspiracy)

| | |
|---|---|
| Base Offense Level (§ 2S1.1 (a) (2)) | 8 |
| Plus: Laundered funds exceeded $120,000 (§§ 2S1.1(a)(2), 2Bl.1(b)(1)(F)) | +10 |
| Plus: Conviction under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)) | +2 |
| Total: | 20 |

_____

        [2]        The government submits that the conduct to which Maragni pled guilty in the
Information in Criminal Docket No. 12-114 and the Third Superseding Information in
Criminal Docket No. 11-0030 was committed as part of Maragni's association with and
membership in the Colombo family, and therefore constitutes relevant conduct pursuant to
United States v. Ruggiero, 100 F.3d 284 (2d Cir. 1996).

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 10

Racketeering Act Thirteen (Extortion - John Doe #11)

    Base Offense Level (§ 2E2.1(a))        <u>20</u>

    Total:        20

Racketeering Act Twenty (Possession of Contraband Cigarettes)

    Base Offense Level
    (§ 2E4.1(a)(1))        <u>9</u>

    Total:        9

Racketeering Act Twenty-one
<u>(Extortion - Individual in North Carolina)</u>

    Base Offense Level (§ 2E2.1(a))        <u>20</u>

    Total:        20

Racketeering Act Twenty-six and Information (CR 12-114)
<u>(Marijuana Distribution Conspiracy)</u>

    Base Offense Level (§ 2D1.1 (a) (5) & (c) (7))        <u>26</u>

    Total:        26

Racketeering Act Twenty-seven
<u>(Extortion - John Doe #19)</u>

    Base Offense Level (§ 2E2.1(a))        <u>20</u>

    Total:        20

Additional Racketeering Act
<u>(Wire Fraud - Bribery of Florida Official)</u>

    Base Offense Level (§ 2B1.1(a) (1))        7

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 11

| | |
|---|---|
| Plus: Intended Loss exceeded $70,000 (§ 2B1.1(b)(1)(E)) | +8 |
| Plus: Misrepresentation That Defendant Acted on Behalf of Government Agency (§ 2B1.1(b)(8)(A)) | <u>+2</u> |
| Total: | 17 |

**Counts One to Four (CR 11-0030 (S-3))[3]**
**(Extortion - Dennis Cinnante)**

| | |
|---|---|
| Base Offense Level (§ 2E2.1(a)) | <u>20</u> |
| Total: | 20 |

**Counts One to Four (CR 11-0030 (S-3))**
**(Extortion - Jimmy)**

| | |
|---|---|
| Base Offense Level (§ 2E2.1(a)) | <u>20</u> |
| Total: | 20 |

**Counts One to Four (CR 11-0030 (S-3))**
**(Extortion - Ash)**

| | |
|---|---|
| Base Offense Level (§ 2E2.1(a)) | <u>20</u> |
| Total: | 20 |

---

[3]     As discussed above, Maragni extended loanshark loans to at least five different individuals and the conduct cannot be grouped under the Guidelines.  <u>See</u> U.S.S.G. § 3D1.2(d) (excluding § 2E2.1, the loansharking guideline, from the offenses to be grouped under § 3D1.2).

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 12

Counts One to Four (CR 11-0030 (S-3))
(Extortion - Hollywood)

      Base Offense Level (§ 2E2.1(a))      <u>20</u>

      Total:      20

Counts One to Four (CR 11-0030 (S-3))
(Extortion - Richard Miccelli)

      Base Offense Level (§ 2E2.1(a))      <u>20</u>

      Total:      20

Multiple Racketeering Act Analysis (§ 3D1.4)

      Highest Adjusted Offense Level      26

      Units:

            Racketeering Act Three (§ 3D1.4(b))     +½

            Racketeering Act Thirteen (§ 3D1.4(b))     +½

            Racketeering Act Twenty (§ 3D1.4(c))     +0

            Racketeering Act Twenty-one (§ 3D1.4(b))  +½

            Racketeering Act Twenty-six (§ 3D1.4(a))  +1

            Racketeering Act Twenty-seven (§ 3D1.4(b)) +½

            Additional Racketeering Act (§ 3D1.4(c))  +0

            Extortion – Dennis Cinnante (§ 3D1.4(b))   +½

            Extortion – Jimmy (§ 3D1.4(b))     +½

            Extortion – Ash (§ 3D1.4(b))     +½

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 13

|  |  |
|---|---|
| Extortion – Hollywood (§ 3D1.4(b)) | +½ |
| Extortion – Richard Miccelli (§ 3D1.4(b)) | +½ |
| Money Laundering (§ 3D1.4(b)) | +½ |
| Total Units: | 6 |
| Levels added: | +5 |
| Adjusted Offense Level | 31 |
| Plus: Aggravating role (§ 3B1.1(a)) | +4 |
| Less: Acceptance of responsibility (§ 3E1.1(a)) | -3 |
| Total: | 32 |

As a result of his guilty pleas, therefore, Maragni faces a mandatory minimum term of incarceration of five years, and his applicable Guidelines sentencing range is 168 to 210 months' imprisonment, assuming a criminal history category of IV.  (Id. ¶ 225).

V.    Maragni's Cooperation

Maragni has provided substantial cooperation in the government's longstanding and continuing investigation into the Colombo family.  The Colombo family, one of the five New York-based LCN families, is a vast and violent criminal enterprise which has included at times more than 100 inducted members and thousands of criminal associates.  This enterprise exists to make money through crime, and relies on violence and threats of violence to do so.  The Colombo crime family has earned millions of dollars from its diverse and illicit activity.  Members and associates of the Colombo crime family have perpetrated scores of murders and other acts of violence to secure and protect these illicit profits.  As further detailed below, Maragni has provided information about many individuals associated with the Colombo family, including several members of the Colombo family leadership, involved in a multitude of crimes, including murder.

Maragni cooperated in three important respects: he proactively cooperated by making more than 90 recordings of his meetings and telephone conversations with members

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 14

and associate of LCN between April 2011 and December 2011; he testified about the
recordings he made and historical information that he had as a result of his long-time
association with the Colombo crime family; and he provided valuable information that may
be used as intelligence to assist the government in its continuing investigation of members
and associates of LCN.

        While the recordings made by Maragni were useful in prosecuting members
and associates of La Cosa Nostra, their use was substantially curtailed as a result of
surreptitious actions taken by Maragni during the course of his proactive cooperation.[4]  First,
while he was proactively cooperating with the FBI (but before he entered into a cooperation
agreement with the government), Maragni collected money in connection with his illegal
loansharking business without advising the FBI.  To do so, Maragni spoke with one of his
criminal associates, Dennis Cinnante, using a cellular telephone that was not being recorded
by the FBI, and passed notes during a recorded meeting with Cinnante to avoid detection
by the FBI.  Only upon being confronted with certain information did Maragni admit these acts.
Specifically, Maragni admitted that (1) he collected approximately $5,500 from Cinnante
when Cinnante met Maragni in Staten Island and approximately $15,000 from Cinnante on
one occasion when Maragni traveled to Florida; and (2) he collected $4,000 from James
Desantis, also known as "Hollywood," another loanshark customer of Maragni.  Second,
while Maragni was proactively cooperating with the FBI, the FBI instructed Maragni to stop
allowing Cinnante to give Maragni's wife money earned from a business that Maragni had
with Cinnante.  Without advising the FBI, Maragni then instructed Cinnante to make future
payments from the business to Maragni's brother, Nick.  Third, on one occasion, while
Maragni was wearing a recording device, Maragni passed a note to Cinnante that said, in
sum and substance, "Don't say anything about Kelly [Maragni's wife], Kim [his girlfriend]
or Nick [his brother]."  During subsequent debriefing sessions, which occurred after Maragni
entered into the cooperation agreement with the government, Maragni admitted that he had
passed these notes.

---

[4]     Because these acts all took place prior to the government's entry of a
cooperation agreement with Maragni and because Maragni admitted his conduct subsequent
to the entry of the cooperation agreement, they did not serve as a basis to find that Maragni
had breached the terms of his cooperation agreement.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 15

As a result of Maragni's acts during his cooperation, as detailed below, Maragni was subject to cross-examination, which significantly undermined both the significance of the recordings that he did make and his testimony.  Furthermore, the government opted against calling him as a trial witness in at least one trial, which also undermined the government's prosecution.  Finally, the government has thus far declined to prosecute certain individuals captured on the recordings made by Maragni in light of the prosecutorial risks as a result of Maragni's actions.

Nonetheless, as further detailed below, Maragni's information has been important with respect to the prosecution of Colombo crime family acting boss Andrew Russo; Colombo crime family acting boss Ralph Deleo, Colombo crime family underboss Benjamin Castellazzo; former Colombo crime family street boss Thomas Gioeli; Colombo crime family consigliere Thomas Farese; Colombo crime family captains Theodore "Teddy Boy" Persico, Jr., and Dennis Delucia; Colombo crime family soldiers Emanuele Favuzza, Joseph Savarese, Ilario "Fat Larry" Sessa and Dino Saracino; and Colombo crime family associates Francis "BF" Guerra, Michael Persico, Joseph Petillo, Angelo Spata and Pat Truglia.

The details of the substantial assistance provided by Maragni are set forth below.

A.      United States v. Thomas Gioeli, et al.
        Criminal Docket No. 08-240 (BMC)

Maragni's cooperation contributed to the government's prosecution of former Colombo family street boss Thomas Gioeli and soldier Dino Saracino for their roles in a long-standing racketeering conspiracy, involving multiple murders as predicate racketeering acts.  During the course of his proactive cooperation, Maragni met with Colombo family soldier Vincent Manzo on several occasions in November and December 2011, during which Manzo repeatedly implicated himself in the disposal of the body of Colombo family underboss William "Wild Bill" Cutolo with Gioeli, Saracino and other members of Gioeli's crew in May of 1999.  Significantly, when one of the meetings was not recorded due to a malfunction of the recorder, Maragni met with Manzo again and brought up the prior conversation in order to obtain a recorded version of the events.  The statements made by

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 16

Manzo strongly corroborated testimony by other cooperating witnesses who participated in the Cutolo murder and the disposal of Cutolo's body with Gioeli and Saracino, and were ultimately admitted at the Gioeli trial as admissions against Manzo's penal interest and/or coconspirator statements. In addition, Maragni testified about the recordings, giving colorful context to portions of the recordings that were either not recorded or not audible on the recordings admitted at trial. Maragni also testified about Gioeli's membership in the Colombo family and Gioeli's ascension to the position of street boss.

   While these recordings and Maragni's testimony significantly assisted the government in its prosecution of Gioeli and Saracino for their roles in the Colombo crime family and specifically in the murder of Cutolo, the effect of both was undermined by Maragni's actions during his proactive cooperation. Specifically, the defense argued that Maragni and Manzo concocted a plan to fabricate Manzo's role in the disposal of Cutolo's corpse to assist Maragni reduce his sentence. While the government submits that this argument is utterly baseless, it may have carried some weight with the jury, which found unproven Gioeli and Saracino's roles in the Cutolo murder.

   B.  United States v. Thomas Farese, et al.
      Criminal Docket No. 12-14 (FB)

   The consensual recordings made by Maragni significantly assisted the government in its prosecution of Thomas Farese, who during the period of Maragni's cooperation was named the consigliere of the Colombo crime family, and Pat Truglia, a criminal associate of Maragni, for their roles in a money laundering conspiracy. Specifically, Maragni recorded both Farese and Truglia agreeing to assist in a scheme to launder funds that were purportedly earned through Maragni's illegal loansharking business. In addition, Maragni recorded Farese disclosing his recent appointment as the consigliere for the Colombo crime family; without Maragni's cooperation, the government would not have learned of Farese's elevation to the position of consigliere as quickly as it did. As a result of these recordings, Farese and Truglia were charged with money laundering and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(a)(3)(B) and (h).

   Again, however, Maragni's actions during the course of his proactive cooperation greatly affected the government's ability to prosecute Farese and Truglia. At

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 17

trial, both defendants argued that Maragni had inappropriately manipulated the recording device used by Maragni to falsely implicate Farese and Truglia in the charged crimes. While the government does not credit this defense and maintains that both Farese and Truglia were responsible for the charged crimes, the government concluded that Maragni would not be an effective witness and chose to prosecute the case by introducing Maragni's recordings without a live trial witness. Even without Maragni as a trial witness, Maragni's actions during his attempts at cooperation created a huge distraction at Farese and Truglia's trial. Ultimately, however, the jury apparently rejected the defense's arguments at least as to Truglia, whom it convicted.[5]  Without Maragni's cooperation, neither Farese nor Truglia could have been prosecuted and Truglia could not have been convicted.  Truglia is awaiting sentencing.

       C.     United States v. Andrew Russo, et al.
              Criminal Docket No. 11-0030 (KAM)

            As the Court is aware, on January 20, 2011, 39 members and associates of LCN were arrested in connection with the above-captioned case. See United States v. Andrew Russo, et al., Criminal Docket No. 11-0030 (KAM).  Many of the defendants entered guilty pleas prior to the disclosure of Maragni's cooperation and his entry into a cooperation agreement with the Office, and therefore it cannot be said that Maragni's cooperation contributed to their entry of guilty pleas.  However, anticipated testimony by Maragni – including consensual recordings made by Maragni documenting additional crimes committed by certain defendants subsequent to their arrest – did contribute to the entry of guilty pleas by Colombo family acting boss Andrew Russo; Colombo family captain Dennis Delucia; Colombo family soldiers Emanuele Favuzza, Ilario "Fat Larry" Sessa and Joseph Savarese; and Colombo family associate Angelo Spata, each of whom subsequently pleaded guilty.  Had any of these individuals not pleaded guilty, Maragni may have testified at trial against them.

            Significantly, Maragni also advised (and would have testified, had there been a trial) that on the evening of January 20, 2011, the day of Maragni and his codefendants'

---

[5]       Farese was acquitted of both charges.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 18

arrest, at Andrew Russo's direction, Maragni, Benjamin Castellazzo and Russo presided over a secret ceremony at which codefendant Ilario Sessa was inducted into the Colombo family.

       D.      United States v. Francis Guerra, <u>et al.</u>
               Criminal Docket No. 10-0147 (SLT)

       Maragni's cooperation also was instrumental in the government's case against Colombo family captain Theodore "Teddy Boy" Persico, Jr., and powerful Colombo crime family associates Michael Persico and Francis "BF" Guerra.  <u>See</u> <u>United States v. Guerra, et al.</u>, Criminal Docket No. 10-0147 (SLT).  Based in part upon Maragni's availability as a testifying witness, both Michael Persico and Theodore Persico, Jr., pleaded guilty before trial.  Guerra was convicted after trial of narcotics conspiracy and wire fraud.

       With regard to Theodore Persico, Jr., Maragni was prepared to testify about Persico, Jr.' s position as a captain in the Colombo crime family.  Aware that Maragni and others were prepared to testify against him, shortly before trial, Persico, Jr., pleaded guilty to conspiracy to commit the murder in-aid-of racketeering of Scopo.  He is awaiting sentencing.

       With regard to Michael Persico, an individual who has profited from organized crime for decades while evading prosecution, Maragni provided information that contributed to Persico's plea of guilty and conviction for extortion conspiracy.  Maragni was prepared to testify about Persico's significant influence in the Colombo crime family and his participation in discussions about drug trafficking.  In particular, Maragni was prepared to testify that he met with Michael Persico to discuss a potential drug-importation scheme, and that Persico – whose father, Colombo family official boss Carmine Persico, and brother, Colombo family acting boss Alphonse Persico, were both incarcerated – considered approving the scheme, which demonstrated Persico's important role within the crime family.  (Maragni told Persico he would not proceed with the scheme without approval from Carmine Persico.)  In additional, Persico asked Maragni for details about Maragni's loansharking business, suggesting that Persico was assuming a leadership role within the crime family in the absence of his father and brother.  Finally, Persico asked Maragni for assistance in collecting a debt owed to Persico's relative, Colombo family member John Staluppi, by

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 19

people in Florida who were affiliated with the Gambino family.  Persico is awaiting
sentencing.

Maragni's cooperation was helpful to the prosecution of Francis Guerra.  In
April 2011, Maragni, who was equipped with a secret recording device, met with Guerra and
discussed Guerra's earlier scheme to extort the owner of The Square pizzeria in Staten
Island, New York.  On the recording, Guerra admitted his participation in the scheme (but
claimed that it was "personal" and not related to the Colombo crime family).  Significantly,
in June 2012, the government proceeded to trial against Guerra, who was charged with
racketeering conspiracy, including predicate acts of extortion, including the extortion of the
owner of The Square, as well as related non-racketeering counts.  At trial, Maragni testified
about Guerra's and his joint involvement in criminal activities over a 30-year period on
behalf of the Colombo crime family.  Maragni testified about the structure of the Colombo
crime family, its rules and method of induction, and the responsibilities of criminals
associated with the Colombo crime family.  He also testified that Guerra was a respected
associate who was close to the Persico family, including acting boss Alphonse Persico.
Although a jury acquitted Guerra of racketeering conspiracy, on September 24, 2013, the
Honorable Sandra L. Townes found that the government had proven, by a preponderance of
the evidence, that Guerra had participated in various crimes in connection with the Colombo
family, including the extortion of the Square pizzeria owner, as Maragni had testified in
Guerra, and accordingly, sentenced Guerra to 168 months' imprisonment, the high-end of the
advisory Guidelines range.  Significantly, Judge Townes noted that she found Maragni's
testimony to be credible and stated that she relied in part on his recording of Guerra.

  E.  United States v. Joseph Petillo
      Criminal Docket No. 11-791 (FB)

Maragni also provided information implicating long-time Colombo crime
family associate Joseph Petillo in a conspiracy to participate in the use of extortionate means
to collect and attempt to collect an extension of credit in the amount of $100,000 from an
individual identified in the complaint against Petillo as John Doe.  Specifically, Petillo
recruited Anthony Russo, who was then an acting captain in the Colombo crime family, to
seek the assistance of Maragni to collect money owed by John Doe (who was presumed to
reside in Florida, like Maragni).  The government initially learned of the plan after a

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 20

cooperating witness made a consensual recording on November 29, 2010 of a meeting
among the cooperating witness, Anthony Russo and Petillo.

Upon his cooperating, Maragni confirmed Petillo's role in the Colombo family
and Petillo's role (along with the roles of Russo and others) in the conspiracy.  In October
2011, Petillo was charged in a criminal complaint that contained the information provided by
Anthony Russo and excerpts of the November 29, 2010 consensual recording.  While Petillo
ultimately pleaded guilty in advance of trial, Maragni was available to testify against Petillo
at a trial and would have provided testimony corroborating the consensual recording made by
the cooperating witness.  Petillo was later sentenced to 15 months' imprisonment.

     F.     United States v. Ralph DeLeo, <u>et al.</u>
             <u>Criminal Docket No. 09-10391 (DPW) (D. Mass.)</u>

Maragni provided information implicating Colombo crime family member
Ralph DeLeo and DeLeo's associate Franklin Goldman in a conspiracy to distribute 250
pounds of marijuana.  In December 2009, prior to Maragni's cooperation, both DeLeo and
Goldman were charged with, among other crimes, their participation in the narcotics
conspiracy.  While both ultimately pleaded guilty in advance of trial, Maragni was available
to testify against DeLeo and Goldman at a trial and would have provided testimony
corroborating the wiretap intercepts and surveillance testimony, including DeLeo's elevation
to the position of acting boss of the Colombo family.  DeLeo was later sentenced to 199
months' imprisonment; Goldman was sentenced to 70 months' imprisonment.

Honorable Kiyo A. Matsumoto
January 28, 2014
Page 21

VI.     Conclusion

        As described above, Maragni has provided substantial assistance to the
government.  Therefore, the government respectfully submits this letter in support of its
motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C.
§ 3553(e), to permit the Court, in its discretion, to depart downward from the applicable
Guidelines range and mandatory minimum sentence when sentencing Maragni.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:     ____/S_____
                              Elizabeth A. Geddes
                              Allon Lifshitz
                              Assistant U.S. Attorneys
                              (718) 254-6430/6164


cc:     Zachary Margulis-Ohnuma, Esq.  (by ECF)
        Senior U.S. Probation Officer Michael Dorra (by email)

Enclosures